UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Kevin Lee,
      Petitioner,

      v.

                                      Civil Action No. 2:09-CV-94

Andrew Pallito, Commissioner,
Vermont Department of Corrections,
      Respondent.

## REPORT AND RECOMMENDATION
(Docs. 4, 17 and 20)

      Kevin Lee, proceeding *pro se*, has filed a petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254. Lee claims that he did not receive a fair trial because: (1) the jury

was allowed to see videotape of him invoking his rights to counsel and to remain silent: (2)

a juror saw him in restraints during trial; (3) the presence of plain-clothes police officers in

the alternate jury box was prejudicial; and (4) the trial court failed to advise him of his right

to testify on his own behalf. Each of these claims was raised on direct appeal and rejected

by the Vermont Supreme Court. The respondent now moves to dismiss Lee's petition,

arguing that the Vermont Supreme Court's rulings were not "contrary to Federal law or an

unreasonable application of such law." (Doc. 20 at 2.)

      For the reasons set forth below, I recommend that the motion to dismiss be

GRANTED and this case be DISMISSED.

## Factual Background

      Lee does not challenge the facts adopted by the Vermont Supreme Court, which

may be summarized as follows. Lee was arrested after getting into an altercation in the parking lot of a Cumberland Farms store in Morrisville, Vermont. He was taken to the police station, placed in a holding cell, and subsequently questioned by police. The questioning was videotaped, and a portion of the tape showing Lee in the holding cell was later shown to the jury. *State v. Lee*, 185 Vt. 110, 113 (2008).

Lee was charged with driving under the influence of alcohol ("DUI"), operating with a suspended license, attempted simple assault, and giving false information to a law enforcement officer. The State also charged that he had been convicted of seven previous DUIs, and prosecuted him as a habitual offender under 13 V.S.A. § 11. *Id.*

On the morning of the second day of trial, Lee's attorney notified the trial court that "several jurors might have seen defendant on a television monitor being led into the court in shackles" and moved for a new trial. *Id.* The motion was denied. *Id.* at 114.

During the trial, two plain-clothes police officers sat in a second jury box directly across from the jurors. Counsel for the defense "argued that the jury would infer that the plain-clothes officers were guarding defendant and conclude that defendant was incarcerated during trial, . . . ." *Id.* Counsel moved for a mistrial, and the motion was denied. *Id.*

Lee was convicted of DUI, attempted simple assault, and giving false information to a police officer. When proof of his prior DUI convictions was presented, the jury also found that he was a habitual offender. After receiving the verdict, Lee initially moved to dismiss his attorney, in part because "'counsel refused [to allow] the defendant to testify on

his own behalf.'" *Id.* (brackets in original).   The motion was later withdrawn.   As the Vermont Supreme Court noted, Lee "never asserted before or during the trial that he was being denied his right to testify."   *Id.*   Lee was subsequently sentenced to 10 years to life for his offenses.

Lee raised five issues on direct appeal.   First, he claimed that by allowing the videotape of his questioning to be admitted into evidence, the trial court erroneously allowed the jury to see him invoking his rights to silence and to counsel.   Second, he argued that the trial court erred in failing to voir dire the jurors to determine if any had seen him on a video monitor while he was shackled.   Third, he claimed that the trial court erred in allowing police officers to sit in the unused jury box during trial.   Fourth, he claimed that the court erred when it failed to designate two alternate jurors.   Lee's fifth argument on appeal was that the court violated his right to testify by not informing of that right.   *Id.* at 113.   The Vermont Supreme Court reviewed each claim, and affirmed Lee's conviction.

Lee's habeas corpus petition brings essentially the same claims raised in his direct appeal.   Namely, he maintains that showing the videotape of his questioning violated his constitutional rights; that jurors saw him on a video monitor in restraints; that the presence of plain-clothes police was prejudicial; and that the trial court failed to advise him of his right to testify in his own defense.

## Discussion

**I.    Legal Standard**

Federal review of state criminal convictions is limited.   Under the Antiterrorism

and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(1)-(2); *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418-19 (2009). "Clearly established Federal law" includes only "the holdings, as opposed to the dicta," of the Supreme Court's decisions at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006).

A decision is "contrary to" federal law "if the state court applies a rule different from the governing law set forth in" the Supreme Court's holdings, or if it decides a case differently than the Supreme Court has on a "set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2002). Relief is appropriate under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

An unreasonable application of law is, of course, different from an incorrect one. *Id.* A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529

U.S. at 411).

"[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  A state court's decision adjudicated on the merits and based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## II.    The Videotape Of Lee's Questioning

Lee's first claim is that the trial court should not have allowed the jury to see video of his questioning by police because it showed him invoking his rights to counsel and to remain silent.   The Vermont Supreme Court reviewed the video, and described its content as follows:

> On the video, defendant is in a holding cell while an officer explains his rights to him from a standard-form DUI processing sheet.   During this explanation, defendant shouts obscenities at the officer.   He stops and remains silent at about the time the officer asks whether defendant understood the rights that were explained to him.   Although the officer asks this question multiple times, defendant does not answer.   Nor does defendant answer the question "Do you want to talk to me now?"

*Lee*, 185 Vt. at 114-15.   Lee argued on appeal that "his failure to answer the latter question was an invocation of his right to remain silent and that it was an error of constitutional magnitude to show the tape of defendant invoking his right to silence to the jury."   *Id.* at 115.

The Vermont Supreme Court noted that the videotape was introduced to show

intoxication, and was admitted for that purpose.    Because Lee did not challenge admission of the tape in his motion for a new trial, the trial court's decision was reviewed for plain error.    *Id.*

Lee now claims, as he did on appeal, that "[h]e invoked his right to silence by not affirmatively saying yes to the question, 'do you want to speak to me now,'" and that due process bars the use of a defendant's post-arrest silence at trial.    (Doc. 23 at 6-7.)    For support, he cites *Doyle v. Ohio*, in which the Supreme Court stated that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."    426 U.S. 610, 618 (1976); *see also Greer v. Miller*, 483 U.S. 756, 762-63 (1987).    The prosecution in *Doyle* used the defendant's post-*Miranda* silence to imply that his testimony at trial was not credible.    Specifically, when the defendant testified at trial that he had been framed, the prosecutor tried to impeach his testimony by questioning why he did not make this same claim after his arrest.    The U.S. Supreme Court reversed the defendant's conviction, explaining that "'it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony[.]'"    *Id.* at 619 (quoting *United States v. Hale*, 422 U.S. 171, 182-83 (1975)).

In *Lee*, the Vermont Supreme Court distinguished *Doyle* and similar cases, noting that in those cases "the prosecution used each defendant's invocation of a right to silence to

prove the defendant's guilt and impeach his testimony." 185 Vt. at 116. Here, the prosecution did not cite Lee's silence either as an impeachment tool or as substantive evidence of guilt. In fact, as the Vermont Supreme Court noted, it is not clear from the videotape that Lee was even invoking his right to silence.

> Assuming that the jury could understand the words spoken on the tape, it is not clear that the jury would have viewed defendant's conduct as an invocation of his right to remain silent as opposed to a pause in his belligerent obscenities. The State did not offer the tape to show defendant was guilty because he refused to speak to the officer; there was no focus at all on the content of what defendant did or did not say. The whole point of showing the tape was to show defendant's behavior. . . . We hold, therefore, that there was no error in the court's decision to play the video, and certainly no plain error.

*Lee*, 185 Vt. at 117. The Vermont Supreme Court also noted that the prosecution referred to the tape in his closing argument merely by reminding the jury that they had "see[n] the video." *Id.*

The rule in *Doyle* "rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993) (internal quotation marks and citations omitted). Accordingly, in order to apply the rule, the Court must look at how the defendant's silence was used at trial. "That is, a jury's knowledge of a suspect's silence is not problematic 'when the knowledge is not used to subvert the defense' or put another way, when the prosecutor does not argue that the jury should infer guilt from the silence." *Montano v. McCann*, 2009 WL 1033598, No. 07-C-1245, at *3 (N.D. Ill. Apr. 17, 2009) (quoting *Splunge v. Parke*, 160 F.3d 369, 372

(7th Cir. 1998)).

There was no *Doyle* violation in this case.   First, it was not clear from the video that Lee was invoking his right to silence.   Furthermore, even assuming that Lee did invoke his right to silence, the prosecution did not actively promote an inference of guilt.   As to the invocation of the right to counsel, there is no record evidence that the video showed Lee invoking such a right, and again, even if he did, there is again no suggestion that the prosecution argued for an inference of guilt.   *See Wainright v. Greenfield*, 474 U.S. 284, 295 (1986) (extending *Doyle* to post-arrest request for counsel).

In light of the circumstances of this case, and in particular the fact that the prosecution made no use of Lee's alleged invocations of his rights, the Court should find that the Vermont Supreme Court's ruling was not contrary to, and did not unreasonably apply, clearly established Federal law.   28 U.S.C. § 2254(d)(1).   Lee's petition for habeas corpus relief on this point should therefore be DENIED.

## III.     Jurors Seeing Lee In Shackles

Lee next argues that one of the jurors saw him on a court television monitor entering the courthouse in handcuffs.   His attorney witnessed the incident and told the court that "when a juror was at the courthouse security checkpoint, 'the T.V. screen went on with [defendant] standing with one of the guards, and the juror looked because it beeped.'" *Lee*, 185 Vt. at 117.   Counsel noted that a guard had tried to block the screen, and conceded that he was unsure whether the image on the screen was clear.   Counsel also told the court that he believed it was juror number fourteen who had seen the image.   The court

excused juror fourteen without questioning.  *Id.*

The court also took testimony from the security officer.   The officer explained that the security monitor usually shows four images from four separate cameras.    "When someone enters the back door of the building, the system makes a beeping sound to alert officers watching the monitor, and then the screen switches to a single image from the back door camera.   When showing a single image, the officer testified, the screen shows a nine-to-ten inch image of low quality."  *Id.* at 118.   In this instance, the image showed Lee standing with another officer.   When the image came onto the screen, the officer at the security checkpoint "stepped between the juror going through security and the monitor, and within a second, the monitor shifted back to showing the four images from the four cameras."  *Id.*   The officer informed the court that he believed it was juror number eight who had seen the image, but that he was not sure.  *Id.*   He was also unsure whether Lee was even in the picture.   (Doc. 21-3, Trial Tr. at 75.)

A discussion ensued as to whether defense counsel could or should testify as to what he saw.   Counsel moved to withdraw as Lee's attorney, arguing that he could not be both the defense attorney and a witness.   The court denied the motion.  *Lee*, 185 Vt. at 118.

After the jury returned its verdict, the court asked the jurors whether any had heard the beep at the security checkpoint, and "specifically inquired of juror eight."  *Id.*   All responded negatively.   That same day, the prosecutor sent defense counsel an e-mail informing him that, as she was leaving the courthouse, juror number eight told the security officer that she did remember the "'monitor incident'" but that it "'didn't mean anything.'"

9

*Id.* at 119. Defense counsel moved for a new trial based upon this information. The trial court denied the motion. The Vermont Supreme Court affirmed, finding that the lower court properly dismissed juror fourteen after hearing from defense counsel, and "questioned the remaining jurors so as to satisfy itself that the incident had no improper extraneous influence on the jury verdict." *Id.* at 119-21.

Lee now cites *Deck v. Missouri* for the proposition that "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." 544 U.S. 622, 626 (2005). *Deck* also established that absent adequate justification for the shackling, the defendant "need not demonstrate actual prejudice to make out a due process violation." *Id.* As the Vermont Supreme Court noted, "[t]he rule articulated in *Deck* . . . is supported by two rationales. The first is that '[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process.' *Deck*, 544 U.S. 630, 125 S. Ct. 2007; accord [*Estelle v. Williams*, 425 U.S. 501, 511 (1976)]. The second rationale is that '[s]hackles can interfere with the accused's ability to communicate with his lawyer.' *Deck*, 544 U.S. at 631, 125 S. Ct. 2007 (quotation omitted)." *Lee*, 185 Vt. at 119. Lee's claim appears to focus on the first rationale, as he makes no claim of an inability to communicate with counsel.

It is not clear from the record whether any juror actually saw Lee in shackles. Even if Lee had been visible to a juror on the television monitor, the record indicates that the image was small, of low quality, and lasted only a second. Defense counsel argued that

10

such exposure warranted a mistrial. The Vermont Supreme Court found that "[t]he case law is decidedly to the contrary." *Id.* at 120.

Although there is no Second Circuit law directly on point, other circuits have held that a juror's brief view of a defendant in restraints, particularly outside the courtroom, does not necessarily rise to the level of a constitutional violation. *See id.* (collecting cases); *United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006) ("In itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation ...."). For example, the Eighth Circuit has held that when the juror's view of the shackled defendant is "brief, inadvertent, and outside the courtroom, prejudice to the defendant is slight" and a mistrial is not warranted. *United States v. Gayles*, 1 F.3d 735, 739 (8th Cir. 1993); *see also Ghent v. Woodford*, 279 F.3d 1121, 1133 (9th Cir. 2002) (no constitutional violation where "a few jurors at most" saw defendant in the hallway entering courtroom in shackles).

Furthermore, in a '2254 proceeding, the question is whether the Vermont Supreme Court either contradicted or unreasonably applied U.S. Supreme Court precedent. The facts in this case are significantly different from those presented in *Deck*. *See Williams*, 529 U.S. at 405-06 (state court decision is contrary to clearly established federal law if it confronts a set of facts materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result). Deck was convicted of capital murder. During the sentencing phase, he was shackled in plain view of the jury, with leg irons, handcuffs, and a belly chain. The United States Supreme Court vacated his sentence, holding that "the Constitution forbids the use of visible shackles during the penalty phase, as it forbids

their use during the guilt phase, *unless* that use is justified by an essential state interest—such as the interest in courtroom security—specific to the defendant on trial." 544 U.S. at 624 (emphasis in original; quotation marks deleted).

Lee was not shackled in the courtroom. Any view of him in shackles was limited to a single juror, was outside the courtroom, and was only for an instant. *Deck* did not address whether, under such facts, the presumption of prejudice applies. 125 S. Ct. at 2015 ("where a court, without adequate justification, *orders the defendant to wear shackles that will be seen by the jury*, the defendant need not demonstrate actual prejudice . . . .") (emphasis added).

In that absence of any such holding, the Vermont Supreme Court found that the trial court's actions after the monitor incident, including dismissing one juror and questioning all others, insured that there had been "no improper extraneous influence on the jury verdict." *Lee*, 185 Vt. at 121. Nothing in *Deck* precluded the trial court's treatment of the issue, or its endorsement on appeal. Lee's petition for relief on this ground should therefore be DENIED.

## IV. Plain-Clothes Police In The Courtroom

Lee next argues that the trial court erred when it allowed two plain-clothes officers to sit directly across from the jurors at trial. Both here and on direct appeal, he has cited only state law to support his claims that the presence of the officers had an "extraneous influence" on the verdict. (Doc. 23 at 12) (citing *State v. Squires*, 179 Vt. 388, 398 (2006); (Doc. 4-2 at 16) (state court appellate brief citing same).

Habeas corpus review is only available for violations of federal law; a violation of state law provides no basis for habeas relief. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (internal quotations and citations omitted); *accord Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 157 (2d Cir. 2009); *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (noting that a challenge to a conviction obtained in violation of state law is not cognizable in federal court); *DiGualielmo v. Smith*, 366 F.3d 130, 136-37 (2d Cir. 2004) (same). The "extraneous influence" standard cited in Lee's brief is purely a product of state law. Lee has not identified any federal constitutional infirmity arising out of the presence of police in the courtroom, and in the absence of any such claim, there is no basis for granting federal habeas relief.

Even if the Court were to consider a federal constitutional claim, the facts of this case would not present a violation. In *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986), the Supreme Court concluded that the conspicuous deployment of security personnel in the courtroom during trial is not the sort of inherent prejudicial practice that, "like shackling," should be permitted only where justified by an essential state interest. In order to establish prejudice, the defendant must demonstrate either that the alleged misconduct was inherently prejudicial or caused actual prejudice. *Id.* at 572.

The Vermont Supreme Court found that there was "nothing beyond speculation to

show that the jury knew that defendant was incarcerated. Court security is now ubiquitous, and its presence does not necessarily show that defendant is incarcerated." *Lee*, 185 Vt. at 122. Consequently, the Vermont Supreme Court essentially found that Lee had failed to show prejudice, and Lee has not presented any viable argument that the state court's conclusion was either unreasonable or contrary to clearly established federal law. I therefore recommend that his claim for relief be DENIED

## V. Failure To Inform Lee Of His Right To Testify

Lee's final argument in his § 2254 petition is that the trial court failed to inform him of his right to testify on his own behalf, and that he never affirmatively waived that right. Lee relies on the U.S. Supreme Court's holding in *Rock v. Arkansas*, 483 U.S. 44 (1987). In *Rock*, the Court held that a defendant's right to testify on her own behalf was a fundamental constitutional right. 483 U.S. at 53 n. 10. The defendant in *Rock* had tried to testify at trial, but was not allowed to because of Arkansas's *per se* rule that a defendant could not testify regarding memories recovered under hypnosis. 483 U.S. at 62.

The Vermont Supreme Court held that *Rock* does not control Lee's case, since Lee did not invoke his right to testify. *Lee*, 185 Vt. at 126-27. The court also acknowledged Lee's argument that "we should follow the circuit and state courts that decided, after *Rock*, to require a personal waiver of the right to testify through a colloquy on the record. Defendant cites numerous courts that now require a personal waiver, including four circuit courts. The requirement of a record colloquy, however, is not the majority rule." *Id.* at 127 (citing *Brown v. Artuz*, 124 F.3d 73, 78-79 (2d Cir. 1997) (collecting cases); 6 W.

14

LaFave et al., Criminal Procedure § 24.5(d), at 437-38 (3d ed. 2007)).

Lee is making a very specific claim in this case: that the trial court erred by failing to inform him of his right to testify and never obtained a waiver by colloquy. He asserted briefly at trial that his counsel had barred him from testifying, thus suggesting that he was aware of the right, but the motion was withdrawn. In *Brown v. Artuz*, a decision issued ten years after *Rock*, the Second Circuit "declined to require that trial courts generally inform defendants of the right to testify and determine whether they intend to waive that right." *Chang v. United States*, 250 F.3d 79, 83 (2d Cir. 2001). *Brown* remains good law on that point, and there is no clear Supreme Court decision to the contrary. Consequently, the Court should DENY Lee's request for habeas corpus relief.

## VI.    Lee's Motion To Dismiss

Also before the Court is Lee's "Motion To Dismiss and Over Turn Sentence For Summary Judgment," in which he asserts that because the respondent failed to provide transcripts and other required filings in a timely manner, the § 2254 petition should be granted. (Doc. 17.) Lee is essentially asking the Court to enter a default judgment in his favor based upon the respondent's alleged failings. However, Second Circuit precedent precludes the Court from granting a habeas petitioner's motion for default judgment without first reaching the merits of the underlying claim. *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir.) (stating that in the context of habeas petitions, entry of default judgment is not warranted unless the petition establishes "a claim or right to relief by evidence satisfactory to the court"), *cert denied*, 469 U.S. 874 (1984).

> [W]ere district courts to enter default judgments without reaching the merits of the [habeas petition], it would be not the defaulting party but the public at large that would be made to suffer, by bearing either the risk of releasing prisoners that in all likelihood were duly convicted, or the costly process of retrying them. In this respect, default judgment in habeas proceedings differs from default in other civil cases.

*Id.*

Because the petition in this case does not have sufficient merit to warrant relief under § 2254, Lee's motion to dismiss should be DENIED.

## Conclusion

For the reasons set forth above, I recommend that the respondent's motion to dismiss (Doc. 20) be GRANTED and Lee's motion to dismiss (Doc. 17) be DENIED. Accordingly, Lee's petition for writ of habeas corpus (Doc. 4) should be DENIED, and this case should be DISMISSED.

Dated at Burlington, in the District of Vermont, this 12th day of April, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).